LAW OFFICE OF

# JUSTIN A. ZELLER, P.C.

JUSTIN A. ZELLER
JAZELLER@ZELLERLEGAL.COM

JOHN M. GURRIERI
JMGURRIERI@ZELLERLEGAL.COM

TELEPHONE: 212.229.2249
FACSIMILE: 212.229.2246

July 29, 2020

**VIA ECF**

Hon.Mary Kay Vyskocil, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse

Re: *Zarate et al v. New Green Emporium Corp. et al*, 17 CV 670 (MKV)

Dear Judge Vyskocil:

This letter concerns the dismissal of this action with prejudice as to defendants and the Court's approval of the attached settlement agreement as fair as to the plaintiff. Defendants consent to this motion.

This case is against a former employer, New Green Emporium Corp. and Hyon Chong Song (the "New Green Emporium Defendants") and alleged successor in interest Hyoun Ah Kim ("Successor Defendant") (collectively, "Defendants"). Plaintiff has alleged his former employer failed to pay him proper minimum wages and overtime pursuant to the Fair Labor Standards Act and New York Minimum Wage Act. Jun Kyu Kim is also a defendant in this action, but he is in default, is not a party to this agreement, and appears to be destitute.

The parties have executed a settlement agreement. Plaintiff has agreed to release the Defendants of the claims made in the amended complaint in exchange for $56,666.66. The New Green Emporium Defendants have agreed to pay $44,666.66 in installments with $10,000.00 up front and the rest in installments of $1,000.00 per month. The Successor Defendant is paying $12,000.00 in one upfront payment. Payment due dates are queued to when the agreement was reached and due dates as set forth in the settlement agreement .If the Defendants fail to make payment pursuant to the settlement agreement, Plaintiff, by letter motion to Your Honor, may immediately seek entry of a judgment against the Defendant for the full amount they owe less any amounts Defendant has already paid plus a penalty. The Plaintiff's attorneys' portion of the settlement agreement is $18,666.66, and the Plaintiff's portion is $38,000.00. The settlement agreement is enclosed.

This action arises under the Fair Labor Standards Act, the Minimum Wage Act, and the Wage Theft Prevention Act. Plaintiff alleges that Defendant violated the wage and hour laws and that the Defendant owes Plaintiff back wages and liquidated and statutory damages.

Plaintiff claims that he worked approximately between sixty-nine and eighty hours per week and that he worked for New Green Emporium Defendants at their bodega from December 2013 until January 2017. Plaintiff alleges he was paid between $480 and $550 per week, that he was not paid spread of hours wages, and that New Green Emporium Defendants failed to provide

Plaintiff with a notice and acknowledgment at the time of hiring and weekly pay stubs pursuant to the Wage Theft Prevention Act. Plaintiff claims he is owed $60,736.63 in unpaid wages, $60,743.63 in liquidated damages, and $10,000.00 in statutory damages for violation of the Wage Theft Prevention Act.

New Green Emporium Defendants and Plaintiff completed depositions and document discovery and interrogatories. Plaintiff has no documents to support his claims. New Green Emporium Defendants claim they paid Plaintiff properly and that Plaintiff's memory is faulty. The New Green Emporium Defendants also provided payroll records that showed the New Green Emporium Defendants paid the Plaintiff correctly. The Plaintiff would face a difficult burden in overcoming the New Green Emporium Defendants' records and testimony.

The Successor Defendant claims that they never knew anything about this lawsuit when they purchased the business, and it is undisputed that the Successor Defendant was not theowner at the time that this lawsuit was commenced or at any time when Plaintiff worked for Defendant. The Successor Defendant denies any liabilities under the doctrine of successor liability, as it had no knowledge whatsoever when it purchased the assets of New Green Emporium Defendants' business. Thus, Plaintiff may also face a difficult burden in demonstrating that the requisite criteria for establishing successor liability exists in this case.

In sum, a *bona fide* dispute exists with respect to wages owed/paid, hours worked, whether Plaintiff could prove entitlement to liquidated damages, and whether successor liability exists. Plaintiff's counsel and Defendants' counsel discussed these issues at length in a series of telephone calls and email exchanges and all agreed that in light of this *bona fide* dispute about the extent of damages, settlement would bring both sides certainty and a quick resolution, and so settlement would be in the best interests of both parties.

Employees cannot waive or settle claims under the Fair Labor Standards Act for unpaid minimum wages or overtime, except by settlements supervised by the Department of Labor or judicially-approved settlements of a civil action. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203-06 (2d Cir. 2015).

Plaintiff and Defendants represent to the Court that the settlement agreement is fair to Plaintiff, reasonably resolves *bona fide* disagreements between Plaintiff and Defendants about the merits of Plaintiff's claims; and demonstrates a good faith intention by Plaintiff and Defendants that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at 203 n.3. Here, the parties believe that the settlement agreement is fair and reasonable because: (1) the Plaintiff is collecting a substantial sum from a small employer; and (2) the settlement agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015).

The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.*

Plaintiff's potential recovery is outlined above. Given the risks of this case, including the facts that Defendants have records contradicting Plaintiff's testimony, the uncertainty of proving

successor liability, and the uncertainty of collecting a large judgment against a bodega, the settlement amount of $38,000.00 to Plaintiff is justified.

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'" *Id.* This agreement was reached after discovery was completed against New Green Emporium Defendants but before it began against the Successor Defendant. Therefore, the settlement will cause the parties to avoid the expense and burdens of litigation and the settlement will provide Plaintiff with a prompt payment, as opposed to an uncertain outcome perhaps years in the future if the case is litigated. Settling the parties' claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, the parties would have moved forward with deposition of the Successor Defendant, the Successor Defendant would have deposed Plaintiff, and all parties would have proceeded with preparation for trial, and trial. Additionally, Plaintiff would have made a motion for conditional certification of a collective action.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the inherent risks and expenses imposed by proceeding to a potential trial and post-judgment collection proceedings. Plaintiff faces the additional risk of recovery. The New Green Emporium Defendant is a defunct corporation. The Successor Defendant currently owns the business, but it is a small bodega located in Manhattan with high operating costs and slow business due to Covid-19. Defendants' ability to pay any judgment that the Plaintiff might win at trial is low. In addition, Plaintiff would have a difficult time establishing the hours he worked during workweeks considering the New Green Emporium Defendants have records showing the Plaintiff worked far less than he claimed. The New Green Emporium Defendants also have records that show they paid Plaintiff correctly, while the Successor Defendant may be able to establish that it is not liable as successor because it did not know about this litigation at the time of purchase of the assets of the New Green Emporium Defendants.

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" *Id.* This agreement was reached by arms-length negotiation by experienced employment attorneys, as both Plaintiff's counsel and Defense counsel routinely handle employment cases, including those brought under the FLSA. The Plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in representing employees in wage and hour litigation. Plaintiff's counsel has represented plaintiffs in over 300 actions for such claims in the Southern District of New York alone, and many others in the Eastern District of New York and the District of New Jersey, and in the courts of the State of New York. Defendants' counsel in this case has successfully represented corporations and individual defendants in a multitude of wage and hours matters in federal and state court, including actions arising under the FLSA.

The fifth *Wolinsky* factor examines "possibility of fraud or collusion." *Id.* There is no evidence of any fraud or collusion in this case between the parties to circumvent the wage and hour laws. The agreement arose via settlement negotiations with opposing counsel. Indeed, this case was heavily litigated, depositions were conducted, and the settlement was reached through arms-length negotiation.

Lastly, the Court must consider evidence of any factors weighing against approval. A class was never certified, a collective action was never conditionally certified, and this settlement is only on behalf of Plaintiff. Further, were this matter to proceed, Defendants have broadcasted its intent to challenge the timeliness of any opt-ins to the collective action, as Defendants dispute any equitable tolling argument as to the collective actions claims.

The settlement agreement also resolves the Plaintiff's attorney's fees and costs. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Minimum Wage Act, N.Y. Lab. Law § 650, *et seq.*, Section 191 of the New York Labor Law, and the Wage Theft Prevention Act, 2010 N.Y. Laws 564. These laws, in combination, provide to a prevailing party in a civil action an award of attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012). This award is mandatory. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

Plaintiff is represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in wage and hour litigation and incorporated in 2005. The sole shareholder of the law firm is Justin A. Zeller, an attorney who graduated law school in 2002 and has specialized in wage and hour law since 2005. Associated with the law firm is John M. Gurrieri who graduated law school in 2013, and was associated with the law firm from February 2014 until July 2017 and again since July 2019. Brandon D. Sherr, who graduated law school in 2010, was associated with this law firm until June 2019, and has specialized in wage and hour law and continues to.

The amount of attorney's fees to which a party is entitled may be based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables, *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989); see also *Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make

separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23–24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS 77033, at *28–30 (S.D.N.Y. May 27, 2014), *adopted by* 2014 U.S. Dist. LEXIS 116671 (S.D.N.Y. Aug. 18, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Mr. Sherr's reasonable hourly rate has been considered and he was found to be entitled to rates of $275 per hour in 2018, $300 and $275 per hour in 2017, and $225 and $300 per hour in 2015. *See Alvarez*, slip op., *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16 CV 1907, 2017 U.S. Dist. LEXIS 185397, at *14 (E.D.N.Y. Nov. 7, 2017), *adopted by* 2017 U.S. Dist. LEXIS 205344 (E.D.N.Y. Dec. 12, 2017); *Duran v. Superior Cooling LLC*, No. 15 CV 7243, 2017 U.S. Dist. LEXIS 82249, at *20 (E.D.N.Y. May 10, 2017); *Patterson v. Copia NYC LLC*, No. 15 CV 2327, 2015 U.S. Dist. LEXIS 189029, at *18 (S.D.N.Y. Dec. 29, 2015);*Galicia*, 2015 U.S. Dist. LEXIS 191532, at *6.

Mr. Gurrieri's reasonable hourly rate has been considered and he was found to be entitled to a rate of $225 in 2018, $250 and $225 per hour in 2017; and $250 per hour in 2015. *See Alvarez*, slip op.; *Gonzalez-Diaz*, 2017 U.S. Dist. LEXIS 185397, at *14; *Duran*, 2017 U.S. Dist. LEXIS 82249, at *20; *Patterson,* slip op. at 15–16.

The plaintiff would have requested that the Court find reasonable hourly rates of $350 for Mr. Sherr and $300 for Mr. Gurrieri. These rates are within the range previously found reasonable for this nature of action in this forum and account for increased experience by each of these litigators since the Courts mentioned above considered their hourly rates.

To determine the reasonableness of the hours, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the hours and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

Plaintiff includes herewith on behalf of the Law Office of Justin A. Zeller, P.C., the contemporaneous time records of the Plaintiff's counsel, which show 32.8 total hours spent in this case. The included description with each entry corresponds to the descriptions in the American Bar Association's Uniform Task-Based Management System, a broadly recognized system of documenting hours. Courts even recommend its use for motions for attorney's fees. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1174 (N.D. Cal. 2004); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N.D. Cal. 2004) ("Although the court considers plaintiff's data in the manner presented, the American Bar Association's "Litigation Code Set" provides a more uniform methodology for categorizing requested hours. *See* American Bar Association ("ABA"), Uniform Task-Based Management System Information, *available at* [http://www.americanbar.org/groups/litigation/resources/uniform_task_based_management_syste

m.html]. The ABA template commends itself to parties applying for fee awards."). Similar productions by the plaintiff's counsel of such contemporaneous time records have been found by the Court to be "complete." *Palacios v. Z & G Distribs., Inc.*, No. 11 CV 2538, 2013 U.S. Dist. LEXIS 112676, at \*\*18–19 (S.D.N.Y. Aug. 6, 2013).

Mr. Sherr's hours in this case are 3.4 and Mr. Gurrieri's are 29.4. This breaks down to $1,190.00 in fees for Mr. Sherr, and $8,820.00 for Mr. Gurrieri: in sum, $10,010.00.

The 32.8 total hours sought are reasonable, appropriately delegated among the involved attorneys requisite to their experience, and necessary to the litigation of this action.

Additionally, the plaintiff's costs total $1,492.05, and include $400.00 for filing fees, $.10 for searching case records, $1.30 for postage, $590.65 for a Court Reporter, and $500.00 for translation services during deposition. These expenses were prepaid by the Plaintiff's counsel. The Plaintiff includes an enumeration of these costs herewith.

Therefore, the total fees and costs sum to a total lodestar of $11,502.05.

Although the lodestar ($11,502.05) is less than the total attorney's fees and costs awarded under the settlement agreement, the proposed allocation of $18,666.66 is reasonable. The total amount apportioned as attorney's fees is fair and reasonable because it is approximately thirty percent of the total settlement plus costs. Courts in this Circuit regularly approve fees of one-third plus costs. Courts in this Circuit regularly approve fees of one-third plus costs. *See, e.g.*, *Rojas et al. v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at \*4 (S.D.N.Y. Oct. 10, 2018) (finding attorneys' fees representing one-third of the settlement amount plus costs reasonable); *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at \*3 (S.D.N.Y. November 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Gutierrez v. Highridge Bagels, Inc.*, No. 17 Civ. 1451 (VLB), 2017 U.S. Dist. LEXIS 90984, at \*2 (S.D.N.Y. June 12, 2017) ("[T]he Court finds the attorneys' fees, which are one-third of the recovered amount plus costs, to be fair and reasonable[.]"); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 1951865, at \*2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees ... are commonly accepted in the Second Circuit in FLSA cases."). In addition, the proposed allocation was negotiated and agreed to between the Plaintiff and the Plaintiff's counsel.

In addition, the proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014). Nothing additional is to be paid by the plaintiff to the plaintiff's counsel. The proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel.

Further, the lodestar multiplier in this case (1.62) is fair and well within the range found to be fair in this Circuit. *See Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, \*24 (E.D.N.Y. 2018) (citing *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090, 2012 U.S. Dist. LEXIS 164265, 2012 WL 5830557, at \*3 (E.D.N.Y. Nov. 16, 2012) ("Courts regularly award multipliers from two to six times the lodestar."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CV 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at \*27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that

this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d at 340(finding that "fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").

   For the foregoing reasons, the parties request the Court find the settlement agreement to fairly compromise Plaintiff's claim under the Fair Labor Standards Act and approve the settlement agreement as fair and reasonable and dismiss this action with prejudice against Defendants.

           Respectfully submitted,

           *John M. Gurrieri*

           John M. Gurrieri

Enclosures (3)